UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOMINIQUE ANDERSON,

                      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

Case # 18-CV-6353-FPG

DECISION AND ORDER

Plaintiff Dominique Anderson brings this action pursuant to the Social Security Act seeking review of the denial of her Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") applications. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 13. For the reasons that follow, Anderson's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On May 14, 2015, Anderson applied for SSI and DIB with the Social Security Administration ("the SSA"). Tr. 177-82, 183-87.[1] She alleged that she had been disabled since May 1, 2002 due to ADHD, PTSD, learning disabilities, agoraphobia, bipolar disorder, uncontrolled diabetes, hearing deficits, hallucinations, oppositional defiance, anxiety disorder, suicidal ideation, and cutting. Tr. 197, 202. On December 13, 2016, Anderson and a vocational expert ("VE") testified at a hearing before Administrative Law Judge David J. Begley ("the ALJ").

---

[1] References to "Tr." are to the administrative record in this matter.

1

Tr. 46-80. On April 19, 2017, the ALJ issued a decision finding that Anderson was not disabled within the meaning of the Act. Tr. 29-41. On April 2, 2018, the Appeals Council denied Anderson's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the

claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ's decision analyzed Anderson's claim for benefits under the process described above. At step one, the ALJ found that Anderson had not engaged in substantial gainful activity since the application date. Tr. 31.

At step two, the ALJ found that Anderson has the following severe impairments: psychiatric impairments alternatively diagnosed as depression, anxiety, bipolar disorder, post-traumatic stress disorder, and learning disability. Tr. 31. At step three, the ALJ found that Anderson's impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 32.

Next, the ALJ determined that Anderson retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, repetitive tasks; work in a low-stress job defined as having no fixed production quotas, no hazardous conditions, only occasional decision making required, and only occasional changes in the work setting; occasional interaction with coworkers and supervisors; and no direct interaction with the general public. Tr. 35-39.

At step four, the ALJ noted that Anderson has no past relevant work. Tr. 39. At step five, the ALJ found that Anderson can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 40. Specifically, the VE testified that Anderson could work as a dishwasher, packager, and price marker. Tr. 40. Accordingly, the ALJ determined that Anderson was not disabled. Tr. 40.

## II. Analysis

Anderson argues that the ALJ's failure to include limitation on Anderson's ability to maintain a schedule in his RFC and his failure to explain why constitute reversible error.[2] The Court agrees.

---

[2] Anderson advances other arguments that she believes require reversal of the Commissioner's decision. ECF No. 10-1 at 19-24; 28-30. The Court will not reach those arguments because it remands based on the improper RFC determination.

4

### A. The Mental Health Opinions in the Record

The ALJ considered the opinions of three sources: Shlynn Hodkinson, a "service navigator" at a non-profit organization that offers services for people with disabilities; Adam Brownfield, Ph.D., a consultative examiner; and Thomas Soule, a licensed clinical social worker ("LCSW") at Anderson's school. ECF No. 12-2 at 20-25.

Ms. Hodkinson evaluated Anderson in August 2015. Tr. 396. She noted that Anderson has multiple mental disabilities including high-functioning autism, bipolar disorder, agoraphobia, depression, anxiety, PTSD, and ADHD. Tr. 37, 396. She discussed Anderson's history of disabilities and noted that she always had mental health accommodations during school, including permission to leave the classroom without asking and to stay home when she was too upset to attend school. She noted that Anderson missed 70% of school during the past year and opined that Anderson would not be able to maintain a competitive employment position that allowed her to come into work only on days in which her depression was at bay. Tr. 37, 396. Even if she found a job that started in the afternoon, she would still struggle with being too depressed to get out of bed and make it to work. Tr. 37, 396. Ms. Hodkinson also opined that Anderson cannot handle stress or finish most tasks and would have difficulty finding employment where she is able to work on her own schedule and location. Tr. 37, 397.

Dr. Brownfield, a consultative examiner, submitted a medical source statement in August 2015. Tr. 405. He noted that Anderson graduated from high school and had been enrolled in special education. He acknowledged Anderson's history of psychiatric disabilities and that she had been receiving mental health services her whole life. Tr. 405. He diagnosed her with a severe form of major depressive disorder with psychotic features, agoraphobia, and PTSD but ruled out autism. He opined that Anderson has "mild to moderate" limitations in maintaining attention and

concentration, maintaining a regular schedule, and learning new tasks; has "moderate" limitations in making appropriate decisions; and has "marked" limitations in performing complex tasks independently, relating adequately with others, and appropriately dealing with stress. Tr. 38, 408.

Mr. Soule, who saw Anderson for weekly counseling sessions for over two years, filled out a mental impairment questionnaire in November 2016. He opined that Anderson has "moderate" limitations in her ability to understand, remember, or carry out one-step instructions; ask simple questions or request assistance; and be aware of normal hazards and take appropriate precautions. Tr. 38, 743. He opined that she has "moderately severe" limitations in her ability to remember locations and work-like procedures; make simple work-related decisions; understand, remember, or carry out multi-step instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted by them; perform at a consistent pace; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior; and respond appropriately to changes in a routine work setting. Tr. 38, 743. He further opined that Anderson has "severe" limitations in her ability to maintain concentration and attention for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, and accept instructions and respond appropriately to criticism from supervisors. Tr. 38, 743. Mr. Soule indicated that Anderson would need to take unscheduled breaks from work and would be absent more than three days per month. Tr. 38, 744.

### B. The ALJ's RFC

The ALJ found each of the three opinions to be "somewhat consistent with the objective medical evidence" and therefore assigned each of them "some weight." Tr. 37, 38. He

incorporated some of their suggested limitations into his RFC. For instance, he accounted for limitations on Anderson's ability to deal with stress and interact appropriately with others by restricting her to a low-stress job with only occasional decision making, occasional interaction with supervisors and coworkers, and no interaction with the public. But he omitted any limitation regarding Anderson's ability to maintain a regular schedule ("Scheduling Limitation").

Anderson argues that the ALJ's failure to include a Scheduling Limitation in his RFC and his failure to explain why constitute reversible error. The Court agrees, because the ALJ failed to reconcile evidence indicating that Anderson would not be able to work on a regular and continuing basis. *See Dierdre R. v. Comm'r of Soc. Sec.,* No. 5:17-CV-0395 (TWD), 2018 WL 4565769, at *4 (N.D.N.Y. Sept. 24, 2018) ("Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."); *Coleman v. Comm'r of Soc. Sec.*, No. 15-CV-6624 (MKB), 2017 WL 1155785, at *12 (E.D.N.Y. Mar. 27, 2017) ("[C]ourts in this Circuit have held that an opinion stating that a social security claimant likely may miss work multiple times per month is probative as to whether the claimant is disabled under the Social Security Regulations.").

**C. Discussion**

Anderson argues that the ALJ erred by assigning "some weight" to all three of the record opinions even though they differed as to her ability to maintain a schedule. The record supports Anderson's argument.

Mr. Soule opined that Anderson has "severe limitations" and would be absent more than three days per month, and Ms. Hodkinson similarly opined that Anderson would not be able to

maintain a competitive employment position that allowed her to come into work only on days in which her depression was at bay. Dr. Brownfield, on the other hand, opined that Anderson had only "mild to moderate" limitations in her ability to maintain a schedule.

The ALJ gave "some weight" to all three of these opinions but offered no rationale for how he reconciled their conflicts. This frustrates this Court's ability to undertake meaningful review of the ALJ's decision. *See Montanez v. Berryhill*, 334 F. Supp. 3d 562, 565 (W.D.N.Y. 2018) ("Manifestly, the Court's analysis is frustrated by the ALJ's lack of explanation for the "some weight" given to each medical opinion of record."); *Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *10 (D. Conn. Dec. 1, 2017) (remanding where, like here, the ALJ gave conflicting opinions the same weight and failed to articulate how he reconciled the opinions); *Rossi v. Comm'r of Soc. Sec.*, No. 5:10-CV-97 TJM ATB, 2010 WL 5313771, at *14 (N.D.N.Y. Dec. 2, 2010), *report and recommendation adopted*, 2010 WL 5325633 (Dec. 20, 2010) ("The ALJ failed to explain if or how he reconciled considerable reliable evidence that conflicted with his conclusion that claimant suffered from a less than marked limitation in this domain. While the ALJ is not required to reconcile every shred of evidence, the ALJ must acknowledge relevant evidence and explain his rejection of such evidence."). Remand is therefore required.

Remand is also required because the ALJ erred by incorporating some of the opinions' limitations into his RFC while rejecting a Scheduling Limitation.

All three opinions found limitations on Anderson's ability to deal with stress and interact appropriately with others. The ALJ accounted for these limitations by restricting Anderson to a simple, routine, low-stress job with only occasional decision making and interaction with others. But the ALJ rejected a Scheduling Limitation as required by at least two of the opinions.[3]

---

[3] To the extent that the ALJ rejected the two opinions suggesting a Scheduling Limitation and agreed with Dr. Brownfield's less restrictive opinion, the ALJ should have given his opinion more weight and explained why, as

"When an ALJ 'uses a portion of a given opinion to support a finding, while rejecting another portion of that opinion, the ALJ must have a sound reason for the discrepancy.'" *Almodovar v. Berryhill*, No. 17-CV-8902 (BCM), 2019 WL 1313883, at *14 (S.D.N.Y. Mar. 22, 2019) (quoting *Annabi v. Berryhill*, 2018 WL 1609271, at *16 (S.D.N.Y. Mar. 30, 2018)); *see also Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) ("The plaintiff here is entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits.").

Here, the ALJ failed to provide a "sound reason" for accepting some portions of the opinions while rejecting the portions suggesting a Scheduling Limitation. His reasoning, in its entirety, was as follows:

> The claimant has a history of psychiatric impairments. The claimant graduated from high school and is currently enrolled in four college courses, two of which are online. In high school, the claimant had poor attendance due to depression issues. The claimant has attended therapy regularly. The claimant has had one psychiatric hospitalization, which occurred in 2002. The medical evidence indicates that the claimant has anxiety and has difficulty in public and around men.

Tr. 38, 39.

This rationale fails to clarify what the ALJ thought was inconsistent about the opinions and confusingly cites evidence that appears to support Anderson's claim. *See Agee ex rel. M.P.W. v. Astrue*, No. 12-CV-0657, 2013 WL 6384595, at *10 (W.D.N.Y. Dec. 6, 2013), *report and recommendation adopted*, 2014 WL 61407 (Jan. 8, 2014) (remanding where ALJ confusingly cited evidence that appeared to support the claimant and "left the Court with no guidance as to how the ALJ decided on a less than marked limitation").

---

discussed above. Further, even Dr. Brownfield indicated a mild to moderate limitation in the ability to maintain a schedule, and the ALJ did not discuss the impact of such a limitation on Anderson's mental RFC.

Anderson asserts that the ALJ's failure to reconcile the RFC assessment with the opinions as to maintaining a schedule was particularly harmful because VE testimony established that this limitation would render her unemployable. The Court agrees. *See Dioguardi*, 445 F. Supp. 2d at 298 (noting that the ALJ's "failure to reconcile the RFC assessment with medical source statements was error, and based upon the testimony given by the vocational expert, the failure was not harmless").

Here, the ALJ asked the VE whether a person who would be off task more than 10% of the day or who would be absent more than one day per month on a regular basis could maintain competitive employment and the VE answered that they could not. Tr. 78. Thus, as Anderson argues, had the ALJ credited the portions of the opinions indicating that Anderson would not be able to maintain a regular schedule and would be absent from work more than three days per month, he may have found her to be disabled. Since he failed to do so and to sufficiently explain why, the Court finds that remand is required. *See Simpson v. Colvin*, No. 6:15-CV-06244 EAW, 2016 WL 4491628, at *14 (W.D.N.Y. Aug. 25, 2016) (remanding where RFC failed to reflect doctor's opinion that plaintiff was "moderately limited" (defined as unable to function 50% of the time) in maintaining a schedule and the VE testified that a person who could not maintain a schedule 20% of the time would be fired from any employment).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124

(2d Cir. 2000); 42 U.S.C. § 1383(c)(3).  The Clerk of Court is directed to enter judgment and close this case.

       IT IS SO ORDERED.

Dated:  May 30, 2019
       Rochester, New York

                                      HON. FRANK P. GERACI, JR.
                                      Chief Judge
                                      United States District Court